UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRIAN A. FERGUSON,

                                        Plaintiff,

        -vs-
                                                            05-CV-448C(F)

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

                                        Defendant.
_____


        Plaintiff Brian Ferguson initiated this action pursuant to section 405(g) of the Social

Security Act, 42 U.S.C. § 405(g), to review the final determination of the Commissioner of

Social Security (the "Commissioner") denying plaintiff's application for Supplemental

Security Income ("SSI") benefits.  The Commissioner has filed a motion for judgment on

the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Item 9), and

plaintiff has responded (Item 21).  For the following reasons, the Commissioner's motion

is denied.

## **BACKGROUND**

        Plaintiff was born on April 20, 1984 (Tr. 43).[2]  He applied for SSI benefits on

September 23, 2002, alleging disability as of February 1, 1992 (Tr. 39-41) due to mild

mental retardation.  Plaintiff's application was denied initially on January 14, 2003 (Tr. 28-

_____

[1]  Michael J. Astrue became the Commissioner of Social Security on February 12, 2007 and is
thus substituted for former Commissioner Jo Anne Barnhart as defendant in this case.  *See* Fed. R. Civ.
P. 25(d)(1); 42 U.S.C. 405(g).

[2]References preceded by "Tr." are to page numbers of the transcript of the administrative record,
filed by defendant as part of the answer to the complaint.

31).  Plaintiff requested a hearing, which was held on March 16, 2004 before Administrative Law Judge ("ALJ") Randall Moon (Tr. 169-217).  Plaintiff testified at the hearing and was represented by JoAnn Lewandowski, a paralegal from Neighborhood Legal Services ("NLS").  In addition, plaintiff's mother, Evelyn P. Ferguson, and Jay Steinbrenner, a vocational expert ("VE"), both testified at the hearing.

By decision dated May 27, 2004, the ALJ found that plaintiff was not under a disability within the meaning of the Social Security Act (Tr. 14-21).  Following the sequential evaluation process outlined in the Social Security Administration Regulations (*see* 20 C.F.R. § 416.920), the ALJ reviewed the medical evidence and determined that plaintiff's impairment, while severe, did not meet or equal the criteria of an impairment listed in Appendix 1, Subpart P, Regulation No. 4 (the "Listings").  The ALJ considered plaintiff's allegations and testimony regarding his limitations and concluded that they were "generally credible" (Tr. 20).  The ALJ then found that plaintiff had no past relevant work, but that he had the residual functional capacity for "work at any exertional level that is limited to one to three step tasks; involves no assembly line work; no negotiation or confrontational work; and requires only occasional contact with co-workers and minimal contact with the public" (*id.*).  Upon considering plaintiff's residual functional capacity along with his age (20 at the time of the decision), educational background (special education high school diploma), and the testimony of the vocational expert, the ALJ found that plaintiff was not disabled because there are a significant number of jobs in the national economy that plaintiff could perform (Tr. 19).  The ALJ's decision became the Commissioner's final determination on May 12, 2005, when the Appeals Council denied plaintiff's request for review (Tr. 5-8).

Plaintiff then filed this action on June 21, 2005, pursuant to the judicial review provision of 42 U.S.C. § 405(g).  On January 31, 2006, the Commissioner filed a motion for judgment on the pleadings on the ground that the ALJ's determination must be upheld because it is supported by substantial evidence in the record (*see* Item 9).

For the reasons that follow, the Commissioner's motion for judgment on the pleadings is denied, and the case is remanded to the Commissioner for further proceedings.

## DISCUSSION

### I.     Scope of Judicial Review

The Social Security Act states that upon district court review of the Commissioner's decision, "the findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. V. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-72 (2d Cir. 1999).  Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401.  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "before the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D. Wis. 1976), *quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986).  The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada*, 167 F.3d at 773.

## II.    Standard for Determining Eligibility for Disability Benefits

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 416.905(a).  As alluded to above, the Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R. § 416.920.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ."  20 C.F.R. § 416.920(c).  If the claimant's

-4-

impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is not capable of performing his or her past relevant work.  Finally, if the claimant is not capable of performing his or her past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).  The Commissioner ordinarily meets his burden at the fifth step by resorting to the medical vocational guidelines set forth at 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids").[3]  However, where the Grids fail to describe the full extent of a claimants' physical limitations, the ALJ must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform."  *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

---

[3]The Grids were designed to codify guidelines for considering residual functional capacity in conjunction with age, education and work experience in determining whether the claimant can engage in substantial gainful work existing in the nation economy.  *See Rosa*, 168 F.3d at 78; *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).

In this case, the ALJ determined that the plaintiff has not engaged in substantial gainful activity since the alleged onset date of his disability (Tr. 19).  Upon review of plaintiff's medical records and hearing testimony, the ALJ found plaintiff's mild mental retardation to be a severe impairment, but not of sufficient severity to meet or equal any of the impairments in the Listings (Tr. 15-16).  At step four of the evaluation process, the ALJ determined that plaintiff's residual functional capacity allowed him to engage in work at any exertional level with certain limitations–specifically, no assembly line work or tasks involving more than three steps, no negotiation or confrontation with coworkers, and minimal contact with the public (Tr. 18).  The ALJ then determined that plaintiff did not have any relevant past employment (*id.*).

Proceeding to the fifth step of the sequential analysis, the ALJ considered the testimony of the vocational expert, the plaintiff's age (20 years old at the time of the hearing), his education (special education high school diploma), his work experience (vocational training as a material handler and janitor/cleaner), and his residual functional capacity (as described above) and determined that there were a significant number of jobs in the economy that plaintiff could perform (Tr. 19).  Based on these findings, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act at any time throughout the date of the decision (*id.*).

Plaintiff contends that this determination is not supported by substantial evidence because the ALJ failed to present the vocational expert with a hypothetical which accurately represented the full extent of plaintiff's restrictions in the workplace–specifically, his ongoing need for supportive job coaching services.  For the reasons that follow, the court agrees with this contention.

-6-

III.     **Hypothetical Questions Posed to the Vocational Expert**

Relevant case law provides that testimony from a vocational expert constitutes substantial evidence regarding a claimant's ability to obtain and perform substantial gainful employment when the testimony is based on properly phrased hypothetical questions which reflect the full extent of the claimant's capabilities and impairments. *See Mikol v. Barnhart*, 494 F. Supp. 2d 211, 226 (S.D.N.Y. May 25, 2007); *see also Scott v. Apfel*, 2000 WL 34032812, at *16 (N.D. Iowa February 17, 2000).  The vocational expert's testimony "is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job." *Mathews v. Barnhart*, 220 F. Supp. 2d 171, 175 (W.D.N.Y. 2002) (citing *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980)). Thus, "[i]f a hypothetical question does not include all of the claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Cox v. Apfel*, 160 F.3d 1203, 1207 (8th Cir.1998); *see also Mehaffey v. Apfel*, 81 F. Supp. 2d 952, 954-56 (N.D.Iowa 2000) (remand appropriate where hypothetical posed to VE by ALJ did not state level of supervision or job coaching claimant required in workplace setting; citing cases).

In this case, the ALJ relied upon the testimony of vocational expert Jay Steinbrenner to determine "whether or not there are a significant number of jobs in the national economy that the claimant can perform given his residual functional capacity and other vocational factors" (Tr. 19).  At the beginning of Mr. Steinbrenner's testimony, the ALJ asked him to characterize plaintiff's work experience for the record (Tr. 204).   Mr. Steinbrenner

categorized plaintiff's current employment with Gorenflo Lock Company as "janitorial cleaning," and plaintiff's previous employment with Goodwill Industries as "material handling" (*id.*).

Next, the ALJ posed two hypothetical questions to Mr. Steinbrenner. The first hypothetical asked him to:

> assume that the hypothetical individual of the same age, education and work experience as the Claimant . . . would be limited to doing simple, routine, one to three step tasks, wouldn't be able to do jobs that would require high rates of production such as assembly line work, wouldn't be able to do jobs that would require any type of confrontation and negotiation and . . . jobs that . . . would only have to have occasional contact with coworkers . . . [and] minimal contact with the general public.

(*id.*). Based on this hypothetical, Mr. Steinbrenner testified that plaintiff was a "good candidate to do janitorial cleaning work," and that plaintiff had been trained for such work through a vocational training program administered by Heritage Centers (*id.*).

Mr. Steinbrenner testified that the Heritage Centers program involved assessment of the employee's abilities and personal adjustment needs to determine if the employee required additional training in a structured work-shop environment, or if the employee could be placed in a more competitive outside job setting with supportive services such as a job coach (Tr. 205). Essentially, the job coach provides on-the-job support to ensure that the employee's developmental deficits do not become a problem to the employer (Tr. 205-06). The coach will initially work alongside the employee once or twice a week, and then gradually reduce the number of meetings until the employee becomes familiar enough with the job to perform the work without supportive contact (Tr. 206).

The ALJ then asked plaintiff's representative, JoAnn Lewandowski, if she had any questions for the vocational expert. Ms. Lewandowski first asked Mr. Steinbrenner to review

the report of the consultative examination conducted by Charles D. Pierson, Ph.D. on December 23, 2002 (*see* Tr. 140-43), which indicated that plaintiff would have difficulty learning new tasks, performing complex tasks, making the appropriate decisions in a normal work setting, and dealing with the normal stresses of a competitive work environment due to his mental retardation (Tr. 207-08). Ms. Lewandowski then asked Mr. Steinbrenner to review the mental residual functional capacity evaluation assessment conducted on January 7, 2003 by Madan Mohan, Ph.D., which indicated that plaintiff is moderately limited in his ability to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; (5) interact appropriately with the general public; and (6) respond appropriately to changes in the work setting (Tr. 146-47). This report also indicates that plaintiff is markedly limited in his ability to set realistic goals or make plans independently of others (*id.*). Dr. Mohan expressed the opinion that plaintiff is able to perform simple work-related mental activities, follow simple directions, and maintain focus on simple tasks in a low-demand work environment (Tr. 148; 208-09).

After reviewing the two consultative examiners' reports and the limitations posed therein, Ms. Lewandowski asked the vocational expert if, in addition to the limitations posed in the first hypothetical question, there would be any jobs in the national economy that plaintiff could perform (Tr. 209). Mr. Steinbrenner testified that, vocationally speaking, plaintiff's prognosis is "good to very good" (*id.*). He further testified that plaintiff would be able to perform a job as a dishwasher, but was better suited to perform janitorial

-9-

work–which was exactly what plaintiff was performing at that time (Tr. 209-10).   Ms. Lewandowski then stated that while plaintiff was currently employed as a janitor in a competitive environment, "he's still receiving work-related kinds of services . . ." (Tr. 211).

Before the vocational expert had an opportunity to address Ms. Lewandowski's statement, the ALJ interjected and said that he would ask Mr. Steinbrenner for specific numbers of jobs that plaintiff could perform "under these limitations" (*id.*).   The ALJ then asked for specific numbers for the first hypothetical question that he posed at the beginning of the hearing.   Mr. Steinbrenner testified that there were 3,200,000 janitorial jobs nationally, and there were 12,210 janitorial jobs in the Western New York region (Tr. 212).   He also testified that there were 1,252,000 dishwashing/kitchen porter jobs nationally, and 2,510 regionally; for jobs as a material handler there were 1,934,000 nationally, and 11,970 regionally (*id.*).

After establishing the specific employment numbers for the first hypothetical, the ALJ then posed a second hypothetical with the following limitations: (1) limitations in the adaption area such that the individual wouldn't be able to set realistic goals or plan independently of others; (2) moderate limitations in the ability to adjust to appropriate changes in the work setting; (3) limitations in understanding and memory; and (4) moderate limitations in remembering detailed instructions (Tr. 213-14).   Mr. Steinbrenner testified that these additional limitations would further reduce the number of janitorial jobs by approximately 30 percent, which would result in about 6,000 or 7,000 regional janitorial jobs (Tr. 214).   Mr. Steinbrenner further testified that these additional limitations would not affect the number of dishwashing/kitchen porter jobs (Tr. 215).

The hearing transcript reflects that when Ms. Lewandowski once again attempted to address the issue of whether plaintiff's need for job coaching services may affect the number of available jobs, the ALJ suggested that she submit any additional arguments in writing (*id.*).   The ALJ then closed the hearing, but left the record open for Ms. Lewandowski's written submission (Tr. 216).   Accordingly, neither of the two hypotheticals presented to the vocational expert reflected plaintiff's need for supportive services as a vocational factor to be considered in determining whether any jobs existed in the economy which plaintiff could obtain and perform notwithstanding his mental impairment.

On March 30, 2004, Ms. Lewandowski submitted a letter to the ALJ outlining her argument that the job coaching services that plaintiff receives allow him to successfully remain in his competitive employment position, and without such support plaintiff would not be able to successfully maintain any employment (Tr. 114-15).   In addition, Ms. Lewandowski attached a letter from Mr. Norman Fleck, Manager of Supported Employment Programs at Heritage Centers, as well as a chart of plaintiff's Supported Work (*i.e.*, job coaching) Contacts from October 2003 to March 2004–the six months prior to plaintiff's hearing (Tr. 116-18).   Mr. Fleck stated in his letter that his organization felt plaintiff would be successful in his employment as long as he received support from a job coach on a regular basis (Tr. 116).   The letter further stated that plaintiff was "very good in all of the areas measured," but he continued to require job coaching services "to assist him with the ongoing issues of self direction and interpersonal relationships" (*id.*).

In his May 27, 2004 decision, the ALJ noted that plaintiff "gets some assistance from a job coach" (Tr. 18), but the ALJ made no mention whatsoever of the position outlined in Ms. Lewandowski's post-hearing submission that without these supportive services, plaintiff

-11-

would not be able to maintain any kind of competitive employment.  This position finds substantial support in the record.  For example, as detailed above, Dr. Pierson recommended that plaintiff continue with his vocational program at Heritage Centers (Tr. 143), and Dr. Mohan found that plaintiff was markedly limited his ability to set realistic goals or make plans independently of others (Tr. 147).  In addition, Mr. Fleck stated in his letter that plaintiff needed the ongoing support of job coaching services in order to sustain employment in a competitive setting (Tr. 116).  Specifically, Mr. Fleck stated that although plaintiff's job with Gorenflo Lock Company was in a competitive setting, plaintiff "receive[d] at least two visits monthly from his Follow Along Job Coach to provide assistance in handling the job" (*id.*).  He further stated that plaintiff was generally able to complete all of his tasks, but that the job coaches were needed because they provided plaintiff with "reminders to move from one task to the next" and advice on the proper way to deal with interpersonal conflicts (*id.*).  Mr. Fleck concluded by stating that plaintiff "will be successful at [his] job with the help of Job Coaching provided on a regular basis" (*id.*).[4]

Upon review of this evidence in light of the record as a whole, the court finds that the ALJ improperly relied on the vocational expert's testimony as a basis for determining that there are a significant number of jobs in the national economy that plaintiff could perform. As discussed above, if the hypothetical questions posed to the vocational expert do not include all of the claimant's limitations and restrictions, or are otherwise inadequate, the expert's response cannot constitute substantial evidence to support the ALJ's conclusion that the claimant is not disabled.  *See Cox*, 160 F.3d at 1207; *Mehaffey*, 81 F. Supp. 2d at

---

[4]*See also* Tr. 117-18 (Supported Work Contacts report indicating that plaintiff received substantial support from job coaches during the months leading up to his March 2004 hearing).

955.  Here, plaintiff's ongoing need for supportive job coaching services is well supported by the evidence in the record, and this factor should have been reflected in the ALJ's hypotheticals.  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) ("An ALJ must propound a hypothetical to a VE that is based on medical assumptions supported by evidence in the record that reflects all the claimant's limitations") (citing *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995)).  Accordingly, it was error on the part of the ALJ not to include this vocational factor in the hypothetical questions posed to the Mr. Steinbrenner, and Mr. Steinbrenner's testimony cannot be considered substantial evidence to support the ALJ's finding of no disability.

Moreover, not only were the ALJ's hypothetical questions defective, the ALJ's written decision was also defective because it did not "contain a sufficient explanation of his reasoning to permit [this court] to judge the adequacy of his conclusions."  *Rivera v. Sullivan*, 771 F. Supp. 1339, 1354 (S.D.N.Y. 1991) (citing *Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988)).  As discussed above, plaintiff's need for job coaching services is amply supported by the record, and his failure to acknowledge this relevant evidence or explain its implicit rejection is "plain error." *Ceballos v. Bowen*, 649 F. Supp. 693, 702 (S.D.N.Y. 1986).

Based on this analysis, and after a full review of the record, the court concludes that the ALJ's determination that plaintiff is not disabled is not supported by substantial evidence in the record.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Item 9) is denied, the Commissioner's denial of plaintiff's application for SSI benefits is reversed, and the case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with the matters discussed herein, including the submission of a hypothetical question to a vocational expert which includes all of plaintiff's impairments, limitations, and restrictions.

The Clerk of the Court is directed to enter judgment in favor of plaintiff.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   September   14   , 2007
p:\opinions\05-448.sep1207